UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LARRY HEGGEM,

          Plaintiff,

  v.

SNOHOMISH COUNTY, *et al*.,

          Defendants.

Case No. C10-1724-RSL-JPD

REPORT AND RECOMMENDATION

## INTRODUCTION AND SUMMARY CONCLUSION

This is a civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff alleges in his third amended complaint that his constitutional rights were violated during his confinement in the Snohomish County Jail between August 2010 and June 2011. Plaintiff also alleges that his constitutional rights were violated during a short stay at a drug treatment facility in December 2010. Plaintiff identifies as defendants in this action Snohomish County; Jerry Sylva and Todd "Doe," employees at Pioneer Center North; and, James Upton, an employee at Evergreen Manor. Plaintiff has been granted leave to proceed with this action *in forma pauperis*.

Following a careful review of plaintiff's third amended complaint, and the balance of the record, this Court concludes that the third amended complaint, and this action, should be

REPORT AND RECOMMENDATION - 1

dismissed, prior to service, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). This Court further concludes that petitioner's pending request for injunctive relief should be stricken as moot.

## BACKGROUND

Plaintiff initiated this action on October 22, 2010 with his submission to the Court of a civil rights complaint under 42 U.S.C. § 1983 and an application for leave to proceed with this action *in forma pauperis*. (*See* Dkt. Nos. 1 and 2.) Before any action was taken on these submissions, plaintiff asked to withdraw his complaint and the action was terminated. (*See* Dkt. Nos. 5 and 6.) On January 4, 2011, plaintiff moved to reopen the case and that motion was granted. (Dkt. Nos. 7 and 9.)

On February 22, 2011, plaintiff filed an updated application for leave to proceed *in forma pauperis* and a motion to amend his complaint to which he attached a proposed amended complaint. (*See* Dkt. Nos. 12 and 13.) On March 10, 2011, plaintiff submitted yet another complaint, which he identified as an "Emergent Complaint," as well as another application to proceed *in forma pauperis*. (*See* Dkt. Nos. 14 and 15.)

Plaintiff's application for leave to proceed *in forma pauperis* was granted on March 17, 2011. (Dkt. No. 17.) On the same date, this Court issued an Order addressing plaintiff's motion to amend and his various complaints. (Dkt. No. 18.) In that Order, the Court explained that the proposed amended complaint filed by plaintiff on February 22, 2011 was deemed the operative complaint in this action.[1] (*Id*. at 2.) The Court also identified a number of deficiencies in the amended complaint which plaintiff would have to correct in order for this action to move forward. (*Id*. at 4-5.) Plaintiff was granted thirty days within which to file a second amended

---

[1] The Court directed therein that plaintiff's motion to amend and his "Emergent Complaint" be stricken. (*See* Dkt. No. 18 at 2-3 n. 1.)

REPORT AND RECOMMENDATION - 2

complaint and was advised that the Court would recommend dismissal of this action if he failed to correct the specified deficiencies. (*Id*. at 5.)

On May 3, 2011, plaintiff submitted his second amended complaint to the Court for filing.[2] (Dkt. No. 24.) A review of plaintiff's second amended complaint revealed that plaintiff had corrected some of the previously identified deficiencies, but that a number of deficiencies remained. Though the Court had warned plaintiff that his failure to correct the deficiencies identified in his first amended complaint would result in a recommendation that the action be dismissed, the Court determined that plaintiff may be able to correct some of the remaining deficiencies and that he should therefore be granted an opportunity to do so. (Dkt. No. 27.) Accordingly, on May 25, 2011, this Court issued an Order declining to serve plaintiff's second amended complaint and granting him leave to file a third amended complaint. (*Id*.) Once again, the Court identified for plaintiff the deficiencies that would have to be corrected in order for this action to proceed. (*Id*. at 2-4.)

Plaintiff submitted his third amended complaint to the Court for consideration on June 9, 2011. (Dkt. No. 30.) Plaintiff asserts in his third amended complaint that his constitutional rights have been violated by policies, customs, and procedures of the Snohomish County Jail and by the deliberate indifference of the Jail staff. More specifically, plaintiff complains that he has been denied adequate medical, dental, and mental health care, and that he has been wrongfully housed in segregation, during the course of his incarceration at the Jail. Plaintiff also complains that the blankets provided at the Jail make him sick and staff have not provided him a reasonable alternative, that he has not been able to conduct "safe" visits with his personal visitors, that the

---

[2] Plaintiff requested, and was granted, a brief extension of time to file his second amended complaint. (*See* Dkt. Nos. 22 and 27.)

REPORT AND RECOMMENDATION - 3

jail does not have locked boxes for grievances, and that he is limited in the number of grievances he is permitted to submit each week.

In addition to his complaints regarding the Jail and the conduct of Jail staff members, plaintiff also asserts in his third amended complaint that his right to adequate medical care was violated during the course of a voluntary civil commitment to a drug treatment facility, Pioneer Center North, by the facility supervisor, Jerry Sylva, and by the medical supervisor, Todd "Doe." Finally, plaintiff asserts that James Upton, a treatment coordinator apparently employed by another drug treatment facility, Evergreen Manor, manipulated the Snohomish County Prosecutor's Office into issuing an escape warrant for plaintiff following his release from Pioneer Center North, and manipulated Jail staff into having plaintiff placed in maximum security.

Subsequent to filing his third amended complaint, plaintiff filed a number of documents seeking to add new claims and/or defendants to his third amended complaint. (*See* Dkt. Nos. 36, 40, 41 and 44.) However, plaintiff may not simply supplement a previously filed pleading with documents identifying new defendants and new claims as they occur. A plaintiff who wishes to amend a previously filed pleading must seek leave of court to file the amended pleading and must present in conjunction therewith a proposed amended pleading which identifies every claim against every intended defendant. Because plaintiff's four most recent submissions do not meet this standard, they will not be considered. At issue at this juncture is whether plaintiff's third amended complaint is sufficient to warrant service on the named defendants. This Court concludes that it is not.

REPORT AND RECOMMENDATION - 4

# DISCUSSION

## Section 1983 Standard

In order to sustain a cause of action under 42 U.S.C. §1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

A local government unit or municipality cannot be held liable under § 1983 solely because it employs a tortfeasor. *Monell v. Department of Social Servs., of City of New York*, 436 U.S. 658, 691 (1978). Rather, a plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal "policy" or "custom" that caused his or her injury. *Bryan County Commissioners v. Brown*, 520 U.S. 397, 403 (1997), *citing Monell* 436 U.S. at 694.

In *Bryan County Commissioners*, the Supreme Court explained that

> it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bryan County Commissioners*, 520 U.S. at 404.

REPORT AND RECOMMENDATION - 5

## Snohomish County

Plaintiff asserts in his third amended complaint that policies, customs, and procedures of the Snohomish County Jail caused him to be denied adequate medical, dental, and mental health treatment. More specifically, plaintiff complains that he experienced a delay in receiving necessary medications for pain and for his mental health condition(s) after being booked into the Jail on August 10, 2010. Plaintiff appears to attribute this delay to the refusal of the medical staff to provide certain medications until plaintiff was evaluated by a nurse practitioner, to the medical staff's refusal to schedule an appointment with the nurse practitioner, and to the refusal of medical staff to verify his medication history with outside sources. Plaintiff also complains that he was denied access to mental health therapy because, pursuant to policy, the Jail provides only mental health medication and not therapy. Plaintiff contends that he was again denied necessary medications by members of the Jail medical staff after his return to the Jail on or about December 21, 2010.[3]

Plaintiff also contends that he was denied adequate dental care when the dentist who provides care at the Jail refused to remove plaintiff's teeth at the rate of one tooth per week, refused to prescribe pain medication, and refused to x-ray all of plaintiff's teeth or request plaintiff's dental records from his outside dentist to confirm that most of plaintiff's teeth are loose and that all are corroded and need to be removed.[4]

---

[3] As will be described in greater detail below, plaintiff was temporarily released from the Jail on December 8, 2010 to go to an inpatient drug treatment facility in an effort to avoid prison time for then pending criminal charges. (*See* Dkt. No. 30 at 12.)

[4] Plaintiff also claims that his due process rights were violated when the dentist denied his request to keep a tooth that had been pulled. Plaintiff contends that this constituted a deprivation of his personal property. However, as the Court explained in its order declining to serve plaintiff's second amended complaint, plaintiff's deprivation of property claim is not cognizable in this action. (*See* Dkt. No. 27 at 3.)

REPORT AND RECOMMENDATION - 6

While plaintiff alleges that the inadequacies in the health care he has received at the Snohomish County Jail are attributable to County policy or custom, he fails to identify with any specificity the policies or customs at issue. The facts alleged throughout the third amended complaint appear to implicate the conduct of individual members of the Jail medical staff. In fact, the complaint contains various references to individual health care providers and allegations concerning the manner in which plaintiff believes their care was deficient. However, plaintiff does not identify these individuals as defendants in this action. Instead, plaintiff attempts to assign liability to the County for what appear to be the acts of individual County employees. As explained above, a municipality cannot be held liable under § 1983 solely because it employs a tortfeasor.

To the extent plaintiff's claims do implicate conduct which may, arguably, be attributable to the County, such as the alleged refusal of the Jail to provide mental health therapy, or the limitations imposed on the type of dental care the Jail will provide inmates, plaintiff alleges insufficient facts to demonstrate that Snohomish County was the moving force behind any violation of his federal constitutional rights.

Plaintiff also asserts in his third amended complaint that he was unlawfully placed in, and retained in segregation. Plaintiff appears to claim that the placement was the result of a retaliatory conspiracy on the part of officers and classification staff. However, plaintiff does not identify in his pleading which officers or members of the classification staff allegedly retaliated against him nor does he identify any conduct properly attributable to the County.

Attached to plaintiff's third amended complaint are two documents which plaintiff labels "additional allegations." In the first of those documents, plaintiff complains that the blankets provided to Jail inmates shed fibers that aggravate his existing medical conditions. (*See* Dkt. No.

REPORT AND RECOMMENDATION - 7

30 at 29.) Plaintiff contends that he was originally denied replacement blankets by an unnamed sergeant and by the medical staff supervisor, Karen Nyguard. (*Id*.) He further contends that when he grieved the issue, a Captain Bly "vindictively" offered plaintiff a cotton suicide smock to use as a blanket. (*Id*.) According to plaintiff, Captain Bly denied his request to use extra sheets or a safety blanket instead, and advised him that an alternative blanket would be given to him when they arrived. (*Id*.) Plaintiff was subsequently provided what he describes as a "fiber liner" which he claims also causes him chest pain and sinus congestion. (Dkt. No. 30 at 29-30.) Plaintiff states that he is currently attempting to trade the liner in for extra sheets but has thus far been unsuccessful. (*Id*. at 30.)

While specifically identifies two individual staff members in his complaint regarding the blankets, the facts alleged do not suggest that either Ms. Nyguard or Captain Bly caused plaintiff any harm of constitutional dimension. Moreover, neither Karen Nyguard nor Captain Bly is identified as a defendant in the caption of plaintiff's complaint. Plaintiff was specifically advised in this Court's Order declining to serve his second amended complaint (Dkt. No. 27) that all intended defendants must be identified in *both* the caption of the complaint and in the body of the complaint. (*Id*. at 2.) The purpose of this directive was to lend clarity to the pleading and to allow the Court and defendants to respond thoroughly and appropriately to the claims asserted therein. Because plaintiff did not identify Ms. Nyguard and Captain Bly as defendants in the caption of his complaint, they are not deemed proper parties to this action.

In the second attachment to his third amended complaint, plaintiff complains that he has not been able to conduct "safe" visits with personal visitors because he is made to use an old Jail visiting cell that does not have a safety call button. Plaintiff does not reference any specific individual or policy in his statement of this claim nor does he allege sufficient facts to

REPORT AND RECOMMENDATION - 8

demonstrate that the visiting cell issue raises concerns of federal constitutional dimension.

Plaintiff also complains, in the second attachment to his third amended complaint, that the Jail does not provide locked boxes for grievances and that he is limited in the number of grievances he is permitted to submit. However, the limited facts alleged by plaintiff in support of these complaints do not demonstrate any violation of plaintiff's federally protected rights.

<u>Drug Treatment Facility</u>

Plaintiff also alleges in his third amended complaint claims arising out of his temporary transfer to a drug treatment facility in December 2010. Plaintiff asserts that he was released from the Snohomish County Jail on December 8, 2010, pursuant to a temporary release order, and was transported to Pioneer Center North ("PCN") where he was to receive in-patient drug treatment. (Dkt. No. 30 at 12.) Plaintiff was transported to PCN by James Upton for what plaintiff describes as a voluntary civil commitment. (*See id*. at 12 and 15.) Once at PCN, plaintiff experienced a delay, as he had at the Jail, in obtaining necessary medications for pain and for his mental health conditions. (*Id*. at 13-14.) As a result, plaintiff asserts, he began suffering symptoms of withdrawal. (*See id*.)

After making complaints to the nursing staff and to his counselor, and receiving no satisfactory response, plaintiff complained to the medical supervisor, Todd "Doe," on December 14, 2010. (*Id*. at 13-15.) Plaintiff contends that, though Todd told him he would check to see why plaintiff had not received his medication(s), Todd did nothing. (*Id*. at 15.) Plaintiff also appears to contend that Todd denied him access to nutritional supplements he took to treat his liver and to boost his immune system. (*Id*.)

Plaintiff next asserts, with respect to his stay at PCN, that on December 16, 2010, he began experiencing chest pain, dizziness, and blurred vision and so went to the front desk and

REPORT AND RECOMMENDATION - 9

asked to speak to a supervisor. (Dkt. No. 30 at 16.) Jerry Sylva, the facility supervisor, appeared in response to plaintiff's request, and plaintiff advised Mr. Sylva that he might be having a stroke. (*Id*.) Mr. Sylva had a nurse take plaintiff's blood pressure and temperature, and then went to find the medical supervisor, Todd. (*Id*.) Mr. Sylva and Todd subsequently went to plaintiff's room but, according to plaintiff, Todd assumed plaintiff was experiencing symptoms of drug withdrawal, not a stroke, and declined to take plaintiff to the hospital. (Dkt. No. 30 at 16.)

Plaintiff thereafter became anxious and upset and begged Mr. Sylva to help him. (*Id*. at 17.) Mr. Sylva instructed another employee to call an ambulance. (*Id*.) The medics evaluated plaintiff and plaintiff requested that he be taken to the hospital for appropriate testing and medications. (*Id*.) According to plaintiff, Todd, Mr. Sylva, and another PCN employee, advised the medics that they didn't want to allow plaintiff to go to the hospital because he was civilly committed and should not leave the facility without a staff member. (*Id*. at 18.) Mr. Sylva and Todd also advised the medics that they would keep a close eye on plaintiff and medically assess him in the morning. (*Id*.) Plaintiff acknowledges that he was monitored throughout the night and felt "a bit better" the next morning. (*Id*. at 19.) Later that morning, plaintiff was advised by an unidentified PCN employee that he was not sufficiently medically stable to remain at the facility and that he was therefore being discharged. (*Id*.) Plaintiff claims that he was dropped off at the bus station and given a bus ticket to Everett. (*Id*.)

Plaintiff thereafter learned that an escape warrant had been issued for him because he failed to return to the Jail from a temporary release order. (*Id*. at 20.) Plaintiff was at that time also facing assault charges arising out of his interaction with Mr. Sylva on December 16, 2010 as

REPORT AND RECOMMENDATION - 10

plaintiff had apparently grabbed Mr. Sylva's shoulder while pleading with him for help and the owner of PCN insisted that assault charges be pursed against plaintiff. (Dkt. No. 30 at 18.)

Plaintiff was booked back into the Snohomish County Jail on or about December 21, 2010, and was immediately taken to the maximum security floor. (*Id*. at 20.) Plaintiff claims that after entering the maximum security unit, he asked one of the escorting officers why he was being placed in maximum security and James Upton, whom plaintiff identifies as "the treatment coordinator," responded that plaintiff needed to be there because he had assaulted a staff member at PCN and then escaped from that facility. (*Id*. at 21) Plaintiff is of the belief that Mr. Upton, who is not an employee of the Jail, manipulated Jail staff into having him placed into maximum security.

Plaintiff alleges that Todd "Doe," Jerry Sylva, and James Upton all violated his federal constitutional rights. This Court questions whether these three individuals are properly deemed state actors for purposes of § 1983 as all are apparently employed by private entities. However, even assuming plaintiff could establish that these three individuals are proper defendants, plaintiff has not alleged a viable cause of action against any of these individuals.

### *1. Todd "Doe" and Jerry Sylva*

Plaintiff appears to contend that PCN employees Todd "Doe" and Mr. Sylva violated his right to adequate medical care. The Eighth Amendment imposes a duty upon prison officials to provide humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). This duty includes ensuring that inmates receive adequate medical care.[4] *Id*. In order to establish an

---

[4] It appears that plaintiff was a pretrial detainee during the time at issue in this action. Claims of inadequate medical care asserted by a pretrial detainee arise under the Due Process Clause of the Fourteenth Amendment and not under the Eighth Amendment. *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996). However, Eighth Amendment standards are still applicable to such claims. *See id*.

REPORT AND RECOMMENDATION - 11

Eighth Amendment violation, a prisoner must satisfy a two-part test containing both an objective and a subjective component. The Eighth Amendment standard requires proof that (1) the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation; and (2) the prison official acted with a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834.

The objective component of an Eighth Amendment claim is "contextual and responsive to 'contemporary standards of decency.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). The state of mind requirement under the subjective component of the Eighth Amendment standard has been defined as "deliberate indifference" to an inmate's health or safety. *Farmer*, 511 U.S. at 834. Under the "deliberate indifference" standard, a prison official cannot be found liable for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. *Id*. at 837.

Plaintiff fails to allege facts demonstrating that he suffered any harm that was sufficiently serious to implicate federal constitutional concerns as a result of his brief interactions with Todd "Doe" and Mr. Sylva at PCN.[5] Accordingly, plaintiff fails to state a claim for relief against defendants Todd "Doe" and Jerry Sylva.

### *2.    James Upton*

Plaintiff contends that Mr. Upton abused his authority when he manipulated Jail staff into placing plaintiff in administrative segregation upon his return to the Jail in December 2010. Though not entirely clear, plaintiff appears to be of the belief that Mr. Upton instigated

---

[5] Plaintiff also contends that his due process rights were violated when he was discharged from PCN without an administrative hearing. However, plaintiff fails to establish that he was, in fact, entitled to a hearing prior to his discharge, or in any event, that either Todd or Mr. Sylva, was responsible for denying him such a hearing. Accordingly, plaintiff has not state a viable due process claim.

REPORT AND RECOMMENDATION - 12

plaintiff's placement in maximum security because he was upset with plaintiff for making him wait on December 8, 2010, the date he transported plaintiff to PCN, and for not appreciating the opportunity to participate in the inpatient treatment program which Mr. Upton had facilitated. Plaintiff also speculates that it was Mr. Upton who called the Snohomish County Prosecutor's Office and gave them "misinformation" that plaintiff had assaulted a PCN staff member and had escaped from the facility. In this Court's view, plaintiff's allegations against Mr. Upton are speculative and conclusory and are therefore insufficient to state a claim against Mr. Upton in this § 1983 action. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

### Request for Injunctive Relief

Plaintiff recently submitted to this Court a request for injunctive relief. Plaintiff appears to be seeking temporary release from confinement to have all of his teeth removed, to get a cancer check-up, and to get baptized. Because plaintiff has not presented the Court with a serviceable complaint, this action cannot proceed and, thus, plaintiff's request for injunctive relief is moot.

### CONCLUSION

For the reasons set forth above, this Court recommends that plaintiff's third amended complaint, and this action, be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). This Court further recommends that plaintiff's request for injunctive relief be stricken as moot. A proposed order accompanies this Report and Recommendation.

DATED this 16th day of August, 2011.

*James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13